SAMUEL B. RIDER *v.* KELLEY & ROBERTS.

*Contract. Damages. Sale.*

In the case of a contract to deliver at a future day, at a specified price and place, property not *in esse* when the contract is made, but to be produced by the cultivation of the earth, and to be of a specified character and description, the property does not pass to the vendee by its mere delivery at the appointed time and place, and its tender to him, if he refuse to accept it.

In such cases the rule of damages for the breach of the contract by the vendee in refusing to receive the property, is the difference between the contract price and its market value at the time of delivery,

COVENANT.    The plaintiff declared upon the following agreement :

" ARTICLES OF AGREEMENT
indented, made and agreed upon this 17th day of July, in the year of our Lord one thousand eight hundred and fifty-six, between Kelley & Roberts, of Derby, in the county of Orleans and State of Vermont, on the one part, and S. B. Rider, of Newport, in the county of Orleans and State of Vermont, Yeoman, on the other part as follows, viz :—The said S. B. Rider, in consideration of the covenants and agreements hereafter mentioned, to be performed on the part of the said Kelly & Roberts, does on

his part agree to deliver or cause to be delivered at Derby to the said Kelly & Roberts for the term of four years, all the hops he raises on from one to two thousand hills. If the said Rider shall cultivate more hills than is mentioned in this contract, the said Kelly & Roberts shall be entitled to their proportion of the hops grown on the whole number of hills, according to the number of hills the said Kelly & Roberts has contracted to receive. Said number of hills are to be cultivated in a good, husbandlike manner yearly during the term of four years, and to be delivered on or before the 10th day of October in each year ; the first time of the delivery of said hops to be in October next; and the said Kelly & Roberts doth on their part agree to receive the said hops produced from the said number of hills, at Derby yearly for the term of four years as aforesaid, and to pay twelve and one-half cents per pound for first sort, and ten and one-half cents per pound for second sort, cash on delivery for each and every pound so delivered ; said hops to be packed in good fine bagging, to be of the years growth in which they are delivered. And it is further agreed by the parties to these presents that in case the said Rider shall fail to deliver all or any part of the aforesaid quantity of hops at the time aforesaid, it shall be lawful for the said Kelley & Roberts to supply the deficiency by purchase elsewhere and to charge the said Rider with whatever sum he shall be obliged to pay therefor beyond that at which the said hops would have been furnished as aforesaid by the said Rider ; said hops are to be Vermont inspection.

In witness whereof, we, the parties to these presents, have interchangeably set our hands and seals the day aforesaid.

KELLY & ROBERTS,　L. S.

S. B. RIDER,　L. S. "

The plaintiff averred in his declaration that in 1857 he raised hops on seventeen hundred and eighty hills, that they were cultivated and packed as provided for in said agreement, that on the 8th of October, 1857, he offered to deliver and tendered said hops to the defendants at their store in Derby, and that they were still ready to be delivered to them in pursuance of such agreement, but that the defendants would not receive them nor pay for them according to their agreement.

The defendants pleaded *non est factum*, and that they had per-formed their covenants, and the case was tried by jury at the December Term, 1858,—BENNETT, J., presiding.

It appeared in evidence that at the time this contract was made, the plaintiff resided in Newport and had a hop yard there, from which he raised about four hundred pounds of hops in the season of 1856, and delivered them to the defendants, and the defendants received and paid for them the price stipulated in the contract.

In the spring of 1857 the plaintiff removed to Coventry and but partially cultivated his hop yard in Newport, the hops having been mostly winter killed. The plaintiff had upon his farm in Coventry a hop yard of about three hundred hills. In June, 1857, the plaintiff purchased the use of three hop yards of indi-viduals residing in Coventry, viz : of Messrs. Niles, Hoyt and Herren. Niles' hop yard contained about four hundred hills, Herren's about four hundred, and Hoyt's three hundred hills. The plaintiff paid Herren and Niles six cents per pound, and Hoyt eight cents for the hops grown on their yards that season, and was to complete the cultivation of them himself, besides pay-ing them the expenses incurred in cultivating their yards up to the time he purchased them. At the time of this purchase the poles had all been set by the former owners, and the hop vines were partly up the poles. The vines had been tied up, and the yards had been cultivated by plowing between the hills, and part of the hills had been hoed. After the purchase the plaintiff cul-tivated these yards the rest of the season, picked and dried the hops and put them in good fine bagging. The hops obtained from those three yards weighed nineteen hundred and fifty-three pounds, were of good quality, and were duly inspected by Ver-mont inspection.

The plaintiff raised upon his own farm five hundred and ninety-nine pounds of hops, four hundred and thirty pounds of which were put in two bales, and the residue were mixed in bales with those raised on the three yards above mentioned.

The plaintiff carried all of these hops to the defendants' store in Derby, and offered to deliver them on the contract by the 10th day of October, 1857. The defendants refused to receive those grown on the Niles, Herren and Hoyt yards, insisting that they

Rider *v.* Kelly & Roberts.

were not bound to take them by the terms of the contract; but were willing to receive and pay for all that the plaintiff raised upon his own farm, according to the terms of the contract, and did receive the two bales, weighing four hundred and thirty pounds, and paid the plaintiff for them, and were willing to receive the residue grown upon the plaintiff's farm if the plaintiff would separate them from those grown on the three other yards. But the plaintiff insisted that the defendants were bound to take all the hops and made no separation. The hops not received by the defendants weighed twenty-one hundred and twenty-two pounds, and were taken by the plaintiff to a neighboring store-house in the vicinity of the defendant's store, in Derby, and there placed in safe keeping for the defendants. The plaintiff notified the defendants where the hops were, and that they were thus deposited for them.

Upon these facts the county court decided that the plaintiff was entitled to recover the contract price of the hops tendered by him to the defendants, with interest, to which the defendants excepted.

*Edwards & Stewart*, for the defendants.

1. The plaintiff cannot recover because he has not performed his portion of the agreement.

2. The court should have instructed that the rule of damages in case the plaintiff was entitled to recover, was the difference between the contract price of the hops tendered and their market value at the time of the tender. *Dana et al.* v. *Fielder*, 2 Kernan 40; 3 Bacon's Ab. Tit. Damages, pp. 56–62; *Gainsford* v. *Carroll*, 2 B. & C. 624; *Boorman* v. *Nash*, 9 B. & C. 145; *Thompson* v. *Alger*, 12 Met. 443.

*Cooper & Bartlett*, for the plaintiff, cited as to the rule of damages, Chipman on Cont. 64, 87, 88; *Curtis* v. *Greenbanks*, 24 Vt. 536; *Blish* v. *Granger*, 6 Vt. 340; *Carpenter* v. *Dole*, 13 Vt. 578; Chitty on Cont. 3d Ed. p. 124 and notes.

Aldis, J. The plaintiff states in his declaration that "he offered to deliver and tendered to the defendants" the hops contracted for, but that "the defendants did not nor would receive

said hops, nor pay for them, but on the contrary neglected and refused and still neglect and refuse to receive or pay for the same." The case states that the defendants refused to receive the hops at their store (the place of delivery,) and they were taken by the plaintiff to a storehouse in the neighborhood of the defendant's store, and there left for the defendants, and the defendants were notified that the hops were so left for them. The court decided that the rule of damages was the contract price which the defendants were to pay for the hops. This rule of damages must stand upon the principle that the vendor in this case, by offering to deliver and tendering to the defendants the hops contracted to be delivered, thereby passed the title to the vendees, so that the hops so tendered became the property of the vendees, and the vendor's title to them ceased, although the vendees refused to accept and did not accept of them.

It is to be observed that this is not the case of the sale of the specific article and the tender of it to the vendee ; nor is it even the sale of goods generally and the agreement to deliver and the delivery of them by a day certain ; nor is it the sale and delivery by the vendor and acceptance actual or constructive by the vendee of a portion of the property delivered. The authorities cited by the plaintiff will be found to range under some one of these heads.

But it is a contract to deliver at a future day property not then *in esse;* property which is to be thereafter produced by the cultivation of the earth, and which is to be of a specified character and description. It comes by analogy within the class of contracts for the manufacture of goods and for their delivery at a future day. In such cases the authorities have abundantly established the general rule that the article must not only be made and offered to the vendee, but that he must accept of it, or it must be set apart for him by his consent, before the title to it will vest in him. And although the cases to some extent modify this general rule, as where the parties agree to treat the article as constructively delivered when finished, or as where the vendee finds the materials and superintends or specially directs in the process of manufacture, yet we find nothing to make this case an exception. It is obvious that the parties did not intend and could not have

intended that a mere tender of the hops by the vendor should pass the title in them to the vendee against his positive refusal to accept them. The hops were to be raised thereafter, were to answer the special description specified in the contract, and were to be of Vermont inspection. The vendee was entitled to examine them and use his judgment in determining whether they came within the contract. They would not become his property against his consent ; although if he wrongfully refused to accept them he would be liable in damages. He was not bound by the offer of delivery to accept them and treat them as his own. Where the contract so plainly points for something further to be done by the purchaser, some further right or privilege to be exercised by him before actual delivery takes place, and actual possession and title change, there the possession and title must be held to remain in the seller, and he must take charge of the property and keep or sell the same as he sees fit. *Hale* v. *Huntley et al.* 21 Vt. 147 ; *Jones* v. *Marsh,* 22 Vt. 144 ; *Gilman* v. *Hill,* 36 N. H. 311 ; 26 Barb. 472.

Granting, therefore, that the defendants, by refusing to receive the hops have broken their contract, we think they are justly liable in damages only for the difference between the contract price and the market price at the time of delivery. Such is the rule in actions brought by the vendor against the vendee for non-delivery. It stands upon this reasonable ground, that as the title to the property remains in the seller, he can, upon non-acceptance by the vendee, sell the property at once for its market price, and therefore that the difference between such market price and the contract price will indemnify him against loss. *Crooks* v. *Moore,* 1 Sandf. 297.

As the case must be sent back for trial on account of the error in the assessment of damages, and as we are not able to fully concur upon the other point, as to whether the defendants were bound to receive the hops they refused to accept, we reverse the judgment without passing on that question.

Judgment reversed.