## W. H. COURTRIGHT & Co. v. LEONARD *et al.*

1. DELIVERY OF PERSONAL PROPERTY. In the sale of personal property, delivery is essential to vest the title in the vendee.
2. SAME. When an entire thing or bulk is sold, the delivery will be sufficient, if made in as complete manner as the character of the property at the time will permit.
3. SAME. When property is sold by weight, measure or numbers, to constitute a complete delivery the specific amount must be weighed, measured or counted, so as to be separate from all similar property in the bulk or mass with which it is mixed.

### Appeal from Des Moines District Court.

### SATURDAY, OCTOBER 6.

REPLEVIN for 25,000 brick, which plaintiffs claim to have bought of one Moore, and which were levied upon by one of the defendants, as sheriff, under an attachment, at the suit of Leonard, against said Moore. The facts attending the sale by Moore to plaintiffs are as follows: On the 27th of September, 1857, Moore was indebted to plaintiffs near the sum of $150, which he agreed to pay them out of a kiln of brick which he had made. The kiln contained 110,000, each arch containing between 9,000 and 10,000. Plaintiffs' agent, at their request, examined the kiln to ascertain the quality of the brick. This agent "computed 25,000 of the

brick, which would by the estimate (of 9,000 or 10,000 to the arch) take two arches and a large fraction of the third." He finding the brick on the west end to be the best, concluded to take 25,000 from that portion of the kiln calculated by arches as aforesaid. He then returned to his employers, and they took from Moore the following instrument:

" *W. H. Courtright & Co.*

*Bought of James C. Moore,*

25 M brick off the west end of my kiln, which kiln is situated about ten rods east of the school house, south of the New School Church in Kossuth Co., @ $6, $150.

September 25th, 1857.

Rec'd payment,

JAMES C. MOORE.

Moore was at the same time credited in plaintiffs' books for the brick, at $6 per thousand. The agent and Moore then returned to the kiln and Moore said, " I deliver to you 25,000 off this west end." He also told plaintiffs that they could have until the next spring to take them away. The brick were never counted out nor separated from the balance of the kiln, nor in any manner set apart for plaintiffs, other than as above stated. The entire kiln was levied on, under Leonard's attachment, on the 29th of October, 1857; and this action commenced in April, afterwards. Under the instructions given, the jury returned a verdict for plaintiffs, from which defendants appeal.

*Phelps & Robinson* for the appellants, insisted that there was not such a sale by Moore to plaintiffs as would, and did, pass the title to the property in controversy, without any other act, citing Story's Sales, section 296; Par. Cont. 441; Chitty Cont. 333 *et seq.*; Long on Sales (Rand's edition) 42–44, 267; *Crofoot* v. *Bennett,* 2 Com. (N. Y.) 258, (precisely in point,) *Cook* v. *Logan,* 7 Iowa 142.

*M. D. Browning* for the appellee.

WRIGHT, J.—The question presented for our consideration

is not, as suggested by appellant's counsel, whether this sale was good between the parties to it, or as to third persons, under the statute of frauds (Code, sections 24–10, clause 1,) but whether there was such a sale by Moore, to plaintiffs, as passed the title, without any other or further act.

It is claimed the sale was complete, for the reason that the delivery was as perfect as could, at the time be made in view of the character of the property sold. Delivery, it is conceded, completes the sale and vests the property in the vendee, but such delivery, in its character, must depend upon that which is the subject of the sale. This rule, however, has more particular application to cases, where there is a sale of the entire thing, as a ship at sea or the like, or to the position or situation of the article sold, as goods *in transitu*, or where they are inaccessible, as logs in a boom. But in this case there was an attempted sale of a portion of a bulk, and the question is, whether there was such a designation of that sold as amounted to a delivery, and hence a complete transfer of the title.

As to the general rule upon this subject there is no controversy. In *Cook* v. *Fagan*, 7 Iowa 142, it was stated thus: "Where some act remains to be done in relation to the articles which are the subject of the sale, as weighing or measuring; or, as in this case, that of separating and setting them apart from the bulk, so that they may be distinguished and identified, the performance of such act is a "pre-requisite, and until it is performed, the property does not pass to the vendee." (Citing *Davis* v. *Hill*, 3 N. H. 382; 7 Cow. 85; 3 Greenl. 44; 2 Hill 137; Story on Cont. section 800; 1 Pars. on Cont. 441.) The same general rule is stated thus by Chancellor KENT, (2 Com. 496:) "When the goods sold are mingled with others, they must be ascertained, designated and separated from the mass, before the property can pass. It is a fundamental principle pervading everywhere the doctrine of sales of chattels, that if goods be sold while mingled with others, by number, weight or

measure, the sale is incomplete, and the title continues with the seller, until the bargained property be separated and identified." "And the reason is," says STRONG, J., in *Crofoot* v. *Bennett*, 2 Com. 258, (a case much like the one before us,) that the sale can not apply to any article until it is clearly designated and its identity thus ascertained."

In *Woods* v. *McGee*, 7 Ohio 467, the earlier and more recent English decisions upon this subject are examined, and it is shown that the later cases adhere to the settled principle, that where a part of an individual mass of property is sold it is necessary that some further act should be done, specifying and identifying the part sold, before the action of trover will lie. See 12 East. 614; 5 Taunt 176; 2 M. & S. 397.

Mr. STORY, in his work on sales, section 296, says: "No sale is complete, so as to vest in the vendee an immediate right of property, so long as anything remains to be done between the buyer and seller in relation to the goods. The goods sold must be separate and identified by marks or numbers, so as to be completely distinguished from all other goods, or from the bulk or mass with which they happen to be mixed. If they be sold by weight, or measure, or numbers, the specific quantity bought must be weighed, or counted or measured, so as to be separate and distinct from all similar goods." And to the same effect is Story on Cont. section 504, and see *McDonald* v. *Hewett*, 15 John. 350; *Riddle* v. *Varnum*, 20 Pick. 280; *Sumner* v. *Hawlet*, 12 Ib. 82.

We have thus, from different authors and cases presented, in a condensed form, the general principle which now obtains, and which, in the language of GRIMKE, J., 7 Ohio, *supra:* "looking to every combination of circumstances, establishes a rule, which should be liable to as little fluctuation as possible." Guided by this rule, was there such a delivery of this property as passed the title to plaintiffs, and such a consequent right to the possession as that they can maintain this action?

This action is replevin, and in it plaintiffs claim a right to the possession of a specific and definite 25,000 brick. If they had bought the whole kiln, had the possession and control of the same been delivered to them, then the entire article being sold, the title would pass, though it might have been afterward necessary to count them in order to ascertain the price of the whole at the rate per thousand fixed by the contract. Thus, to take an illustration often used, if a flock of sheep be sold at so much per head and it be agreed that they shall be counted after the sale, to determine the entire amount, the sale is held to be valid and complete. But if a given number out of the whole flock are sold, no title is acquired until they are separated and their identity ascertained. So in this case, if there had been a sale of the two arches on the west end of the kiln, for a gross sum, without reference to the number of brick therein, we think the title might have passed without an actual separation of such arches from the balance of the kiln. It is known that these kilns are so constructed that each arch stands by itself, at least to such an extent as that it can readily be ascertained and determined where one closes and the construction of another commences. This being the case, it can be seen at once that these two arches could be as readily distinguished from the entire kiln, as could all the sheep in one of several pens, or the barrels of flour in a specified room of a warehouse containing several apartments, all filled with flour.

The facts in this case, however, are different from either of those supposed, and so radically different that we do not see that it can be brought within the principle governing them. Plaintiffs were to have 25,000 brick from the west end of the kiln, and they bring replevin upon the ground that this number of brick was so specifically set apart to them, or that this was so susceptible of being done by the officer that their identification is entirely certain and possible.

We cannot think so. The brick were left in the kiln untouched and their position unchanged. Somewhere in the third arch, taking the calculation made to be correct, was the dividing line, which was to divide plaintiffs' brick from those of Moore. Where this was, however, there was nothing to indicate, nor could it be shown until there was a count, and the 25,000 definitely ascertained. There is no pretense that in counting out the number sold, two or three arches would be taken, no more and no less; nor yet that it was known to what row in any arch this number would extend. And much less could it be known to what brick in a particular row. And thus, as it seems to us, there was no such separation or identification of the article sold, as to completely distinguish it from the bulk or mass with which it was connected. There was no such counting of the brick, the specific quantity bought, as to place them separate and distinct from the balance of the kiln. And if there was not, the delivery was incomplete, as we understand the authorities, and the title did not vest in plaintiff.

Judgment reversed.