THOMAS CORNELL, Respondent, *v.* WM. J. CLARK, as Sheriff, etc., Appellant.

While the delivery of personal property to the vendee under an executory contract of sale is an important and controlling fact on the question as to change of title, it is not conclusive; if the delivery is simply to meet some term of the contract not inconsistent with the retention of title by the vendor, it will not pass the title contrary to the intention.

So where anything remains to be done to ascertain and identify the subject of sale the title does not pass.

A railroad corporation entered into a contract with M., by which the latter agreed to deliver to the former, at certain specified points on the company's lands, twenty thousand ties, at fifty-five cents each for first-class ties, and thirty-five cents "for what shall be adjudged second-class ties," to be inspected and counted by a person named. The company agreed to advance fifteen cents apiece for ties as they were delivered, "the remainder to be paid on or about the time the ties are taken and used." M. delivered a quantity of ties, which were counted, and the company paid the advance agreed upon. The ties were never inspected or divided into classes. The company became insolvent, and its property and franchises were sold on foreclosure. In an action wherein the question was as to the title to the ties, *held*, that the title did not pass to the company by the delivery; that it was not bound to take all the ties, but only such as should be adjudged first and second-class, the inspector having power to reject unmerchantable ties, and so, it could not be known until inspection and separation were made what part of the ties were to be taken.

*Burrows* v. *Whitaker* (71 N. Y. 291), distinguished.

Plaintiff, who was a director of the company, purchased the ties of M., paying individually the price agreed upon. The company had discontinued its operations and there was no evidence that plaintiff was acting as its agent in the purchase. He removed the ties after the purchase. Defendant, as sheriff, levied upon them by virtue of an execution against the company. *Held*, that, assuming plaintiff was disabled, as against the company, from purchasing on his own account, the legal title was vested in him by the purchase; and, as the company had not claimed the benefit thereof, which it could only do by reimbursing the price paid, that the property could not be taken from his possession by execution against it, and defendant was not in a position to question plaintiff's title.

(Argued January 28, 1887; decided March 1, 1887.)

APPEAL from judgment of the General Term of the Supreme Court, in the fourth judicial department, in favor of plaintiff

entered upon an order made June 5, 1885, which denied defendant's motion for a new trial and directed judgment on a verdict directed by the court.

This action was for the claim and delivery of certain railroad ties.

The primary question relates to the title to the ties on the 28th of February, 1879. The plaintiff claims title by virtue of a purchase in 1875, from persons, who, in 1871 and 1872, had cut the ties on their land, under contracts with the Delhi & Middletown Railroad Company, and had deposited them on or near the lands of the company. In 1879 the plaintiff took possession of and removed the ties, and while they were in his possession the defendant, as sheriff, on the twenty-eighth of February, in that year, levied thereon under an execution on a judgment rendered in 1873 against the company, claiming that the ties are the property of the defendant in the execution.

On or about the 20th day of December, 1871, the company entered into four several contracts for the purchase of ties, and the alleged title of the company is founded thereon, on an alleged delivery of the ties to the company under the contract.

The contract with Munson, one of the vendors, was in writing. The other contracts were verbal, but it ·is sufficiently accurate for the present purpose to state that they followed the terms of the Munson contract, and in determining the question presented, reference will be made to the Munson contract only. By the contract between Munson and the railroad company, Munson agreed to deliver to the company during the years 1872 and 1873, and prior to March 1, 1873, at certain specified points on the line of the railroad, 20,000 ties of chestnut and oak timber, "to be piled within the bounds of said railroad , and so near the track that they can be conveniently handed on to the cars." The company agreed to pay "fifty-five cents each for first-class ties, and thirty-five cents each for what shall be adjudged second-class ties, to be inspected and counted by Mr. Emerson,

superintendent of the Rondout and Oswego Railroad, or, if he cannot be procured, by some man of experience in that business, to be agreed upon by the parties, each party to pay one-half of the expense of inspection and counting." The company also agreed to advance fifteen cents apiece for ties as they were delivered, to be paid between the fifteenth and twentieth days of each month during delivery, the remainder to be paid on or about the time the ties are taken and used." Soon after the date of the contract, Munson commenced drawing and delivering ties, some of which were piled on the lands of the company, and others, for want of room, on land of other parties adjacent, hired for that purpose by Munson. The ties were counted and the count delivered to Grant, the agent for the company, and the company, upon his audit, advanced the fifteen cents apiece, as provided in the contract. The ties were never inspected ·under the contract, or separated into classes, and the company never paid anything beyond the advance payment. The company ceased operations in 1874, and its property and franchises were sold on foreclosure in 1881.

In 1875, the vendors being pressed for money, and having failed to obtain payment of the balance unpaid from the company, applied to the plaintiff, to purchase the ties. The application resulted in an agreement between the vendors and the plaintiff, on their part, to sell, and on the part of the plaintiff to purchase all the first class ties at thirty-five cents each, deducting what had been paid by the railroad company. The sale was consummated, the plaintiff paying in cash the sum of $3,971.09, the amount of the purchase-price over and above the sum of $5,257.01, the amount of the advance made by the company under the contracts. The negotiation was for a sale to the plaintiff individually, and the receipts for the purchase-money recited a sale to him.

The ties remained where they were originally piled until 1879, when they were removed by the plaintiff. In that year he purchased the culls at the price of five or six cents apiece. The plaintiff, at the time of the original contract,

and at the time of his purchase, was a director of the Delhi and Middletown Railroad Company.

*I. H. Maynard* for appellant. Upon delivery to and acceptance of ties by the railroad company, the title thereto became vested in the company, and the defendant had the right to levy upon them under the execution which he held. (*Burrows* v. *Whitaker*, 71 N. Y. 291 ; *S. C.*, 8 Hun, 493 ; *Crofut* v. *Bennett*, 2 N. Y. 260 ; *Campbell* v. *Patchen*, 19 id. 333, 334 ; *Bradley* v. *Wheeler*, 44 id. 502, 503 ; *Grote* v. *Gile*, 51 id. 431.) If conflicting inferences can be drawn from the testimony, or if the intention of the parties, to be gathered from the terms of the contract and their conduct under it, is regarded as doubtful, then the court should have submitted to the jury the question as to the intent of the parties, and whether there was a delivery to and acceptance by the company. (*Burrows* v. *Whitaker*, 71 N. Y 295 ; *Terry* v. *Wheeler*, 25 id. 520 ; *Bacon* v. *Gillman*, 57 id. 656 ; *Schindler* v. *Houston*, 1 Coms. 261, 265, 269.) The trial court erred in not submitting to the jury the question whether the plaintiff was not acting as the officer or agent of the railroad company in the transactions between him and the vendors of the ties, in the summer of 1875, and under which he makes claim of title. (*Abbot* v. *Am. H. Rub. Co.*, 33 Barb. 578 ; *Van Epps* v. *Van Epps*, 9 Paige, 237 ; *Slade* v. *Van Vechten*, 11 id. 21 ; *De Caters* v. *Le Ray*, 3 id. 78 ; *Hubbell* v. *Medbury*, 53 N. Y. 98 ; *Lytle* v. *Beveridge*, 58 id. 592 ; *Terry* v. *Bk. of Orleans*, 9 Paige, 649 ; *S. C.*, 7 Hill, 260, *Bridenbecker* v. *Lowell*, 32 Barb. 9 ; *Dobean* v. *Racey*, 3 Sandf. Ch. 60 ; *Toole* v. *Kiernan*, 48 Sup. Ct. 163 ; *People* v. *Bd. of Stock Brokers Bl'dg Co.*, 92 N. Y. 98 ; *Wetmore* v. *Porter*, id. 76.)

*S. L. Stebbins* for respondent. Plaintiff acquired a perfect title unless the vendors had, prior to his purchase, transferred their title to the railroad company. (*Stowell* v. *Otis*, 71 N. Y. 36, 37, 38.) Under the Munson contract the title to the ties did not pass to the railroad company. (*Stephens* v. *Santee*, 49

N. Y. 35; *Caulkins* v. *Hellman*, 47 id. 449; Benj. on Sales [2d ed.] 69, 110, 111, 235, 236, 257; *Singham* v. *Eggleston*, 27 Mich. 324.) The acceptance of the ties would depend upon their quality, to be ascertained by inspection. (Benj. on Sales [3d Am. ed.] § 140.) In selling to the plaintiff, the vendors exercised their right of rescission. (*Starbird* v. *Barrons*, 38 N. Y. 230, 237.)

ANDREWS, J. It is plain that no title to the ties which were the subject of the contract between Munson and the Delhi and Middletown Railroad Company, passed to the company on the execution of the contract of December 20, 1871. The contract was then wholly executory. It is inferable from the evidence, that, at the date of the contract, the ties were for the most part uncut on the lands of Munson.

No part of the purchase-money had been paid, and by the terms of the contract no payment was to be made until the ties were delivered at the points designated. It is clear that no title *in præsenti* passed, or was intended to pass on the execution of the contract. This, however, is not decisive of the question in controversy. The decision turns upon the point whether there was a delivery of the ties in such sense as to vest the title in the railroad company. It is competent for parties to an executory contract for the sale of personal property, to provide in their agreement where and on what event the title shall vest in the vendee. If there is no express agreement on the subject, the question is to be solved by considering all the terms of the contract in connection with the acts of the parties, and applying thereto the rules of law applicable to the case. There is no express provision in the contract of December 20, 1871, upon the subject. It is insisted, however, that the contract provides for a delivery of the ties on the lands of the company, and that a delivery having been made pursuant to the contract that act was decisive on the question of title. It is doubtless true that the delivery of personal property to the vendee, under an executory contract of sale, is an important and often

a controlling fact on the question of title. Where the delivery is absolute it furnishes the strongest evidence of an intent to pass the title. The voluntary surrender, by the vendor, of all dominion over the property is, as a general rule, inconsistent with the idea that the title is retained by the vendor. But if the delivery is for a special purpose, as where the property is put into the custody of the vendee to meet some term of the contract not inconsistent with the retention of title by the vendor, such a qualified delivery will not pass the title contrary to the intention. In looking at the contract of December 20, 1871, it is, we think, apparent that it was not contemplated that the title to the ties should pass, on the ties being deposited on the lands of the railroad company. The delivery provided for was for the purpose of inspection and selection. The payment to be made at that time was an *advance*, and the advance was to be made when the ties were deposited at the points designated. The company, by the contract, were to pay forty-five cents each for first-class ties, and thirty-five cents each for what "shall be adjudged" second-class ties, upon inspection pursuant to the terms of the contract. The company was not bound to take all the ties which might be delivered by the vendor, upon the lands of the company, upon which an advance might be made. It contracted to take only first and second class ties, according to the inspection of the person designated, or to be designated, as provided by the contract, who, in respect to this duty, was constituted the agent of both parties. The power of rejection was involved in the power of selection. The inspector might reject unmerchantable ties not coming within either of the classes mentioned. It could not be known until the inspection had been had and a separation made what part of the ties should be taken, or what number should be paid for, or what sum beyond the advance payment the company was bound to pay, or the vendors entitled to receive. It was not contemplated that there should be an inspection for the purpose of ascertaining the quality of the ties when the advance payment was made.

The company could safely advance the fifteen cents on the whole number of ties deposited, but the final payment was to be made " when the ties were taken and used," and when the number and quality of the ties to be taken were ascertained by inspection, the " remainder " of the purchase-money would be known. The case is within the general principle that where anything remains to be done to ascertain and identify the subject of the sale, the title does not pass. What was left to be done was not simply to determine by count or by a division of the whole number of ties into two classes, the amount remaining unpaid, but it involved identification and specification also. The case is unlike *Burrows* v. *Whitaker* (71 N. Y 291.) In that case the vendee was to take all the lumber delivered, irrespective of selection. Nothing remained to be done except its separation into classes. In this case the company was bound to take only such part of the ties as should be adjudged by the inspector to be first or second-class ties. The case is more nearly like the case of *Stephens* v. *Santee* (49 N. Y. 35); see, also, *Lingham* v. *Eggleston*, 27 Mich. 324; Bingham on Sales, 227 *et seq.* There are other circumstances which support the conclusion on this branch of the case. By one contract it was expressly agreed that the title should remain in the vendor until the purchase-money should be paid. A large number of ties were piled on lands of private persons, for which rent was paid by the vendors. It is claimed that the company accepted the ties and waived inspection. We think there was no sufficient evidence upon which the jury would have been justified in finding such acceptance or waiver.

But the defendant assails the title of the plaintiff, or rather he insists that the purchase by the plaintiff in 1875, enured as a purchase by the company, on the ground that the plaintiff, being at that time a director of the railroad company, was disabled from purchasing the ties on his own account, and that in fact he purchased them as agent for the company. The company discontinued its operations in 1874, and its property was sold

on foreclosure in 1881. It had paid on the ties in 1872 and early in 1873, the advance payment amounting to $5,257.01, and though called upon to do so, made no further payment. In 1875 the vendors, through one Grant, applied to the plaintiff to become the purchaser of the ties, and it resulted in his agreeing to purchase the first-class ties at the price of thirty-five cents each, provided the vendors would " deduct therefrom what had been paid by the railroad company." This was assented to and the plaintiff paid for the first-class ties in cash the sum of $3,971.09. Subsequently, in 1879, he bought the culls at five or six cents apiece. The negotiation was for a sale to the plaintiff individually, and the receipts for the purchase-money paid by the plaintiff, recited a sale to him. It is not claimed that the plaintiff was authorized to purchase for the company, nor to advance any money on its account, nor is it denied that the $3,791.09 was paid by the plaintiff from his own means. The ties remained where they were orignally deposited until 1879, when they were removed by the plaintiff and were in his possession at the time of the levy by the defendant. Assuming that the plaintiff was disabled by the rule in equity from purchasing the ties on his own account, or from holding them as against the company, nevertheless the legal title was vested in him by the purchase, and the property could not be taken from his possession under an execution against the corporation. The plaintiff was not, in fact, the agent of the company, to make the purchase, nor has the company claimed the benefit of the purchase. The purchase by a trustee of trust property is voidable, not void. The company could only claim the benefit of the purchase by the plaintiff on reimbursing the sum expended by him in obtaining the title. The defendant claiming under the execution is not in a situation in this proceeding to question the plaintiff's title.

We think the verdict was properly directed and the judgment should, therefore, be affirmed.

All concur.

Judgment affirmed.