A. BUSHNELL, Appellant, v. GEO. E. KING BRIDGE COMPANY and GEO. E. KING.

**Sales:** PERFORMANCE OF CONTRACT: INSPECTION OF GOODS.   Where the only question to be determined by the jury was whether lumber complied with the specifications of the contract, the manner and by whom it was inspected was immaterial.

**Same:** BREACH OF CONTRACT: DAMAGES.   The damage for breach of a contract to furnish lumber as agreed is the difference between the contract price and the market price at the place of delivery, unless by the terms of the contract it appears that some other damage likely to result to the buyer for failure of the seller to comply therewith was contemplated; so that a purchaser, in the absence of any indication in the contract that the lumber was to be used in the construction of a bridge under another contract, cannot recover damages for failure to complete the bridge in time, or for extra expense incurred in protecting it during a delay in its completion by reason of a failure to furnish the lumber as agreed.

*Appeal from Polk District Court.*—HON. HUGH BRENNAN, Judge.

TUESDAY, NOVEMBER 24, 1908.

ACTION to recover the amount due under a contract of sale of oak lumber to the defendant.   The defendant in its answer admitted the contract, but alleged that a large portion of the lumber tendered in performance of the contract did not comply with the specifications, and was rejected; and by way of counterclaim defendant alleged damages by reason of said breach of contract on plaintiff's

part. There was a trial to a jury, and an affirmative verdict in favor of defendant. From judgment on this verdict plaintiff appeals.—*Reversed.*

*Joseph P. Fontron* and *Edmund H. McVey,* for appellant.

*Clark & McLaughlin,* for appellees.

McClain, J.—The contract for the sale of oak lumber by plaintiff to defendant, to be delivered at Llano, Tex., was made by correspondence, in substance, as follows: Defendant asked plaintiff to quote prices on a bill of oak lumber which, and in response to a tentative offer, defendant wrote to plaintiff as follows: "We hereby place order with you for the following lumber to fill the specifications here given for delivery f. o. b. cars Llano, Llano Co., Tex. Plank 2½ in. x 8 in.—18 ft. long 36270 ft. Must be first class white or burr oak, free from large, loose or rotten knots or shakes, square edged and evenly sawed. We expect to pay you for same $26.25 per M. delivered f. o. b. cars destination. Will want delivery in 60 days and as much earlier as possible. Would like that you try and impress upon the mill that cuts this material the fact that a short time delivery is necessary, and keep after them and see that they don't overlook it. If for any reason you can't take this order please advise us by return mail so that we can place it elsewhere without delay." The plaintiff responded as follows: "In reply to your letter of the 20th with the order for Llano, Tex., I would state that I have sent this order forward to the only mill that I know of where I can get it and upon receipt of their acceptance of the order I will notify you and accept the same. As I wrote you in making a bid that I only had one place where I could get this order from. I want to get their acceptance of the order before accepting

it myself.   I have requested them to wire me as soon as they decide to take it, and I ought to know by Saturday. I will notify you immediately on receipt of telegram." And further by telegram:  "I have just received a telegram from my mill in Louisiana that I placed your oak order with for Llano, Tex., stating they would accept the order. This makes it all right.   Many thanks."

The evidence tends to show that the lumber was purchased by defendant to be used in the construction of a bridge, and that when the first shipment was received, many of the pieces did not correspond with the specifications, and were rejected by the inspector of defendant, who was acting in connection with an inspector for the county for which the bridge was being built under a contract between the county and this defendant.   Thereupon there was a protest by plaintiff against the rejection of a portion of the lumber, and a request by defendant that plaintiff send enough more lumber to fill the contract. Plaintiff refused to make the last shipment under the contract, but required defendant to use all the lumber shipped, and refused to send an additional amount in place of that rejected, whereupon defendant replied as follows:  "Your favor of the 18th received, and we note that you have instructed the mills to ship in the balance of the oak to Llano.   We have written our foreman there to advise us just as quick as it arrives there so that we can have our man go at once to Llano and inspect it along with the county inspector.   When it has been inspected we will send you detailed report.   In the meantime, please have railroad company follow cars with wire tracer so as to insure prompt delivery."   The issues submitted to the jury related to the rejection by defendant of a portion of the lumber, the expense of procuring other lumber in place of that rejected, and damages resulting from delay in completing the bridge as the result of the failure of plaintiff to furnish the lumber called for by the contract.

I.   Some complaint is made by appellant as to the rejection of a portion of the lumber shipped under the contract, on the ground that he was not advised of the kind of inspection to which the lumber would be subjected; that is, an inspection by the representative of the county, as well as by the inspector of defendant.   But we see no error in the action of the court in this respect.   The simple question to be determined by the jury, and as we think properly submitted to them, was whether the lumber shipped complied with the terms of the contract, and it was wholly immaterial how the inspection was made, whether by defendant's inspector acting alone, or by such inspector acting in co-operation with an inspector of the county, who should be authorized ultimately to determine whether the bridge as constructed by defendant complied with the contract between defendant and the county.   The purpose of the defendant seems to have been to use all the lumber furnished so far as it would be acceptable to the county, even though it did not fully comply with the specifications of the contract between defendant and plaintiff.   But the sole question for the jury was whether the lumber rejected was properly rejected as not in compliance with the specifications of the contract between the plaintiff and the defendant.   In this respect we see no error in the action of the court.

1. SALES: performance of of contract: inspection of goods.

II.   With reference to the measure of damages for failing to comply with the contract in furnishing lumber of the proper character and quality, the court instructed the jury that, if defendant exercised reasonable care and diligence in procuring other lumber to take the place of lumber furnished not complying with the contract, the measure of damages would be, "the difference between the contract price for the lumber purchased by the defendants from the plaintiff and that which they bought to take the place of the lumber not delivered by the plaintiff in accord-

ance with his contract, and you will determine from the evidence as to the fair, reasonable market value at the point of delivery of such lumber so purchased to take the place of the lumber which had been rejected." The objection made to this instruction is that the true measure of damages should have been stated to be the difference between the contract price of the lumber not complying with the contract and the market price of such lumber at the place of delivery, while the instruction refers to the amount which defendant, in the exercise of reasonable care and diligence, paid for lumber purchased in place of that rejected. We are not satisfied that the instruction is open to the criticism made upon it. While it is true that it refers to the purchase of lumber by the defendant in place of that rejected, it does tell the jury that they are to determine from the evidence the fair reasonable market value at the point of delivery of the lumber so purchased. Possibly the jury might have been misled by the instruction, and we think it would have been better to omit all reference to the amount which defendant paid in purchasing such lumber. But, in view of the reversal of the judgment on a ground hereafter to be stated, it is not necessary for us now to determine, whether the instruction was prejudicial to the plaintiff.

III.  There was evidence that, by reason of the delay resulting from procuring other lumber in place of that rejected, defendant was under the necessity of hiring men for a considerable time to watch the bridge until it should be completed and ready for delivery, and the court instructed the jury to include this expense as an element of damage under defendant's counterclaim. This as we think was erroneous. There is nothing in the correspondence constituting the contract for the purchase of lumber by defendant from plaintiff in any way suggesting the purpose for which the lumber was to be used, and plaintiff was not given any

2. SAME: breach of contract: damages.

information, at the time the contract was made, which would charge him with notice that, as a result of failure on his part to perform his contract, defendant would be put to the expense of guarding a bridge in which the lumber was to be used, or would be subject to damages to the county for failure to complete the bridge within any time required by the contract between defendant and the county. The damages for breach of contract to supply goods which may be purchased on the market is limited to the difference between the contract price and the market price at the place of delivery, unless it appears from the terms of the contract itself that some other damage is likely to result to the buyer from the failure of the seller to comply with such contract. Thus in *Laporte Improvement Company v. Brock,* 99 Iowa, 485, involving the recovery of damages for failure to furnish brick complying with the specifications of a contract, it was held that the buyer could not recover loss of rent of a building to be constructed of such brick, the construction of which was delayed by the seller's noncompliance with the contract; there being nothing in the contract to indicate that the brick was to be used in the construction of a building, and that loss of rent of the building would result from noncompliance. This is in accordance with the well-recognized rule announced in *Hadley v. Baxendale,* 9 Ex. 341. The principle of the case last cited is so well established that further discussion of the rule is unnecessary. In the absence of any indication in the contract that the lumber was to be used for the construction of a bridge under another and independent contract between defendant and the county of Llano, damages sustained by the defendant on account of the failure to complete the bridge within a specified time, or on account of additional expense in protecting the bridge during the time its completion was delayed by plaintiff's failure to furnish lumber as agreed,

could not properly be considered.  For this error the judgment must be reversed.

IV.   There is some complaint with reference to the action of the court in making rulings on a motion to direct a, verdict while the jurors were present, in which rulings the court referred to certain facts in issue as having been established by the evidence, which need not be considered.  If there was error in the action of the court in this respect, it is not likely to occur on another trial.

For the reason pointed out the judgment is *reversed.*