FRED SEMPEL, Appellee, v. NORTHERN HARDWOOD LUMBER COMPANY, Appellant.

**Sales:** PASSING OF TITLE: INTENT. Ordinarily the question of when title to personal property passes depends upon the intent of the parties, and upon a dispute as to the terms and material circumstances of the agreement it becomes a question for the jury; but where there is no conflict in the evidence or the terms of the agreement are admitted the intent becomes a question of law.

**Same:** WHEN TITLE PASSES. A sale of personal property is not complete and title does not pass so long as something remains to be done to the property; the article must be designated and its identity ascertained; if part of a greater mass it must be set apart, and if sold by weight or measure the quantity must be ascertained, unless the proven intent of the parties is otherwise.

**Same:** DELIVERY. Ordinarily delivery is an essential though not universal requisite to the passing of title, as where the property is ready for delivery title may pass if such is the intent of the parties, even though the quantity is to be ascertained for the purpose of computing the amount due.

**Same:** PROPERTY NOT YET PRODUCED OR PREPARED FOR DELIVERY. Where property has not yet been produced or something remains to be done to it to put it in condition to comply with the contract, title does not pass until the production or preparation is completed; and this is especially true where the sale depends on the quality of the article and the purchaser has the right of inspection.

**Same:** SALE OF LOGS YET TO BE CUT: INSPECTION. In the instant case plaintiff contracted to sell logs of a certain kind and quality at a specified price, to be cut from standing timber and delivered at a stated place where they were to be inspected and measured by a person agreed upon by the parties. Because of plaintiff's delay in delivery and absence of the inspector they were not inspected and measured before they were carried away by a flood. Plaintiff did not insist on inspection by another party but apparently acquiesced in waiting for the one agreed upon. *Held,* that there was no intent to pass title prior to inspection and that title was still in the seller at the time the logs were washed away.

*Appeal from Des Moines District Court.*—HON. W. S. WITHROW, Judge.

WEDNESDAY, MAY 12, 1909.

ACTION at law to recover the purchase price upon an alleged sale of hardwood logs. Judgment for plaintiff, and defendant appeals. *Reversed* on rehearing.

*Poor & Poor,* for appellant.

*Blake & Wilson* and *Power & Power,* for appellee.

WEAVER, J.—The petition alleges that in November, 1905, plaintiff entered into an agreement with defendant for the sale of elm, cottonwood, maple and birch logs, none to be less than eight inches in diameter at the top and none less than ten feet in length, said logs to be delivered on the river bank on plaintiff's land, and to be paid for by defendant at the rate of $5 per thousand feet. Under this contract he alleges that he delivered to defendant thirty-nine thousand feet of logs which defendant inspected, and then paid to plaintiff on the agreed price thereof the sum of $40, leaving a balance of $155 due and unpaid, for which sum, with interest, recovery is demanded. The defendant admits it entered into an oral agreement with

plaintiff to purchase twenty thousand or more feet of logs of the kinds and dimensions described in the petition at $5 per thousand feet delivered on the bank of the Mississippi River, but avers that said logs were to be cut from trees then standing on the land of plaintiff, and to be sound and straight and delivered on the river bank at a place where defendant's steamboat could reach them, and before defendant's sawmill would shut down for the season, and that said logs were never, in fact, delivered to or accepted by the defendant, nor were they at any time examined or scaled as had been agreed upon by the parties. The answer further alleges that in the month of January, 1906, plaintiff represented to defendant that he had cut and banked a part of said logs, and would cut and deliver all of them during the spring of that year, but that, after a part or all of said logs had been deposited on the river bank and before any of them had been scaled, examined or accepted by defendant, they were swept away by a flood and lost. By way of counterclaim defendant alleges that, at the request of plaintiff in March, 1906, it loaned to plaintiff the sum of $40, for which he agreed to account in the spring, when the logs should be delivered and accepted, and for this sum it asks judgment against plaintiff. Plaintiff denies the counterclaim. As will be readily apprehended from the foregoing statement, the central point of controversy in this case is upon the question whether there was a delivery—a completed sale by which the title to the logs had passed to defendant before they were carried away by the flood. All other matters of dispute may be treated as settled by the verdict of the jury.

So far as the testimony bears upon the agreement and intent of the parties concerning the delivery, it may be epitomized as follows: At the time of the contract, no particular trees were specified or pointed out. The species, dimensions, and quality were stipulated for, but the timber from which the logs were to be cut and put in shape for

sawing was standing in its natural condition, leaving it
to the plaintiff to select therefrom and cut and tender to
defendant such logs as he might claim filled the contract
description.    Referring to the agreement in this respect
and the manner of its performance, the plaintiff testifies:
"At this time the timber stood on my ground. I told him
it had yet to be cut.  I was to cut for him all the logs I
could. . . .   When I made the bargain to deliver the
logs, it was said they had to be straight, sound and solid.
We were to find out how many thousand I delivered so as
to know how much money I was to get.  We had to get
them scaled.  Kunz, Putnam's scaler, the man over in
Illinois we have been talking about, was to scale them.
The bargain was made in November. I didn't say a word
about how much timber I had down there.  I sold him all
I could get out."   After saying that about the 1st of
March he went to the defendant to have the logs scaled,
but found it could not be done because his man had not
yet got them all banked, and that some two weeks later,
on again applying to defendant to have the scaling done,
he was told that the scaler agreed upon was away from
home, but would return about the 1st of April, when the
matter would be attended to, he proceeds to say:   "I
wanted to have the logs scaled at that time to determine
how many there were, and whether or not they were the
kind I agreed to sell."   The defendant's manager who made
the agreement with plaintiff testifies that Kunz was named
and pointed out at the time as the man who would scale
and inspect the logs to determine whether they were such
as had been bargained for; but this was not to be done
until the logs had all been cut and banked.  The defendant
never at any time scaled or inspected them.  As we have
seen, the failure to have them scaled at the time of plain-
tiff's first application therefor was due to the failure of
his own employee to have the logs fully cut and banked.
At the time of the second application, the scaler was away

from home, and, while there was some talk of employing another person to do it, nothing came of the suggestion. At or about this time plaintiff applied to defendant's manager for money with which to pay the man who had cut the logs and received $40. There is a dispute whether this was a loan or a payment, but, as we view the case, the fact in this respect is not of controlling importance. Kunz returned about the 1st of April, but within a short time thereafter, and before the scaling or inspection had been attended to, the greater part of the logs had been washed away. Under this showing made by plaintiff and defendant, which is practically undisputed, we have to inquire whether there was a completed sale; or, in other words, in which party was the title to the logs at the time of their loss.

This question is one frequently arising and authorities bearing thereon are very numerous. The precedents, English and American, are not altogether harmonious, but the general rules which obtain in this and many other jurisdictions may be considered well settled, though inconsistency in applying them to apparently similar states of fact is by no means uncommon. Broadly speaking, the question when the title to personal property passes is dependent upon the intention of the parties; and, where there is any dispute as to the terms and material circumstances of the agreement, it is a question for the jury to determine. Where, however, there is no material conflict in the testimony or the terms of the agreement are admitted, the intent of the parties is ordinarily for the court to pass upon as a matter of law.

1. SALES: passing of title: intent.

In the absence of a proved intent otherwise, a sale is not complete, and title does not pass so long as anything remains to be done between the parties. The article must be designated and its identity ascertained. If it be part of a greater mass or bulk, it must be segregated or set apart. If sold by weight or measure, the quantity must be ascertained by the

2. SAME: when title passes.

usual standards. Ordinarily delivery to the purchaser is essential, though change of possession is not a universal requisite to a completed sale. These principles have been affirmed by this court in *Cook v. Logan,* 7 Iowa, 142; *Courtright v. Leonard,* 11 Iowa, 32; *Snyder v. Tibbals,* 32 Iowa, 447; *Davis v. Budd,* 60 Iowa, 144; *Hamilton v. Finnegan,* 117 Iowa, 623; *Augustine v. McDowell,* 120 Iowa, 401; *Martin v. Lesan,* 129 Iowa, 573; *Harwick v. Weddington,* 73 Iowa, 303; *Mellinger v. Hunt,* 94 Iowa, 351; *McClung v. Kelley,* 21 Iowa, 509.

Where, however, the subject of the sale is ready for delivery, title may pass when such is the obvious intention of the parties, even though the quantity is yet to be de-

3. SAME: delivery.

termined as a basis for computing the amount to be paid. *Welch v. Spies,* 103 Iowa, 389; *Riddle v. Varnum,* 20 Pick. (Mass.) 283.

It must be observed that the rules of law to which we have here adverted have special reference to cases where the specific property which is the subject of negotiation is in existence and is set apart or designated, or is capable of being set apart or designated for delivery to the purchaser. In other words, in order that there shall be a sale under the application of the rules referred to, the specific goods or property must be definitely ascertained and agreed upon, though, this being done, the quantity may be left to subsequent ascertainment. *Allen v. Elmore,* 121 Iowa, 241.

When, however, the property has not yet been produced or manufactured, or something remains to be done to put it into condition to comply with the terms of the contract,

4. SAME: property not yet produced or prepared for delivery.

it is a practically universal rule that the title does not pass until the work of manufacture or production or preparation has been completed, and the property accepted by the purchaser. This is especially true where the sale is made dependent upon the quality of the article, and the purchaser

reserves the right of inspection to ascertain whether it is such property as he has bargained for. This has been applied to a sale of wheat yet unthreshed (*Caywood v. Timmons,* 31 Kan. 394, 2 Pac. 566), a sale of logs yet to be cut and scaled (*Martin v. Hurlburt,* 9 Minn. 142 [Gil. 132]), a sale of tobacco yet to be prepared for market (*Jennings v. Flannagan,* 5 Dana [Ky.] 217), a sale of wood not yet cut (*Frost v. Woodruff,* 54 Ill. 155),· and a sale of cattle to be selected out of a larger herd (*Martin v. Lesan,* 129 Iowa, 573).

In the case before us there is little or no controversy as to the facts bearing upon the question under discussion. When the contract was made, the logs to be sold were not · in existence, except as part of the forest.

5. Same: sale of logs yet to be cut: inspection.

The trees had yet to be selected, the logs cut and banked, and their quality and quantity to be determined. That no title passed at the time the contract was made is so evident that we would not be justified in prolonging this opinion for argument upon that point. The only debatable question is whether the deposit by plaintiff of a quantity of logs alleged to be such as he had agreed to sell was a delivery to the defendant, or, rather, whether the deposit of these logs at the place indicated was such a completion of the contract, theretofore executory, as to pass the title to the defendant. If the contract had been for the sale of a specific or designated lot of logs all of which the defendant bound itself to receive and pay for at some price when delivered on the river bank, the court or jury might well find that the sale was complete when the logs were thus banked. And this conclusion would not necessarily have been negatived even if the logs had yet to be classified and measured to ascertain the amount of purchase money due. This proposition is well illustrated by the case of *Burroughs v. Whittaker,* 71 N. Y. 291 (27 Am. Rep. 42). There the defendant agreed to buy all the lumber, both good and culled,

which plaintiff should deliver on the bank of the Delaware within a given period.  The lumber was deposited on the river bank, but, before it was counted or measured by the defendant, it was washed away.  The sale was held to be complete, and the defendant bound to pay according to the contract.  The difference between the cited case and the one at bar will be seen in this:  That, while in the former the purchaser bound himself to take the entire product, in the latter it undertook to purchase only so much of the product as conformed to a given standard of quality, kind and size, and, if any of the logs placed upon the bank did not conform to the agreed standard, he was under no obligation to receive or pay for them at any price.  It follows of logical as well as of legal necessity that until defendant had inspected and accepted the logs tendered it, or had expressly or impliedly waived its right to such inspection, the property did not pass.  In a case decided by the Vermont court, the defendant contracted with the plaintiff for the purchase of hops not yet raised, the hops to be cured and packed in a specified manner and of Vermont inspection.  Defendants having refused to receive and pay for certain hops tendered under the contract, plaintiff sued to recover the agreed price.  It was there held that action for the contract price could not be maintained.  The court says:

It is to be observed that this is not a case of a sale of the specific article and tender of it to the vendee; nor is it even a sale of the goods generally and agreement to deliver, and delivery of them by a day certain; nor is it a sale and delivery by the vendor and acceptance actual or constructive by the vendee of a portion of the property delivered.  It is a contract to deliver at a future day property not then *in esse,* property which is thereafter to be produced by cultivation of the earth, and which is to be of a specified character and description.  It comes by analogy within the class of contracts for the manufacture of goods, and for their delivery at a future day.  In such

cases the authorities have abundantly established the general rule that the article must not only be made and offered to the vendee, but that he must accept it, or it must be set apart for him by his consent before the title will vest in him. . . . It is obvious that the parties did not intend, and could not have intended, that a mere tender of the hops by the vendor should pass the title in them to the vendee against his positive refusal to accept them. The hops were to be raised thereafter and were to answer the special description specified in the contract, and were to be of Vermont inspection. The vendee was entitled to examine them, and use his judgment whether they came within the contract. They would not become his property against his consent, although, if he wrongfully refused to accept them, he would be liable in damages. He was not bound by the offer of delivery to accept them and treat them as his own. Where the contract plainly· points to something further to be done by the purchaser, some further right or privilege to be exercised by him before actual delivery takes place and title changes, then the possession and title must be held to remain in the seller, and he must take charge of the property and keep or sell the same as he sees fit. *Rider v. Kelley,* 32 Vt. 268 (76 Am. Dec. 176).

Upon a sale of goods to be manufactured and delivered at a later date the Maine court · has held that the title passes only by the assent of both parties. *Moody v. Brown,* 34 Me. 107 (56 Am. Dec. 640). Of course, such assent need not always be expressed, but may be implied from the conduct and manner of dealing pursued by the parties. In an action upon a contract for the sale of wood and providing that the purchaser should measure before paying for it, such measurement or some other definite act of acceptance has been held necessary to the passing of the title. *Pittsburg & St. L. R. R. Co. v. Noel,* 77 Ind. 110. To the same effect is *Ballantyne v. Appleton,* 82 Me. 570 (20 Atl. 235). A sale of growing crop which the seller is to cut and put in stack, and there measure, will not pass title to the vendee until measurement is made. *Hughes v.*

*Wiley,* 36 Kan. 731 (14 Pac. 269). Contract to sell certain lumber to be inspected and measured as ordered by the purchaser passes no title until the inspection and measurement have been had. *Miller v. Seaman,* 176 Pa. 291 (35 Atl. 134). See, also, *Cornell v. Clark,* 104 N. Y. 451 (10 N. E. 888). *T. W. & W. R. R. Co. v. Clew,* 67 Ill. 378; *Comfort v. Kiersted,* 26 Barb. (N. Y.) 472; *Stephens v. Santee,* 49 N. Y. 35. The last cited case involved a sale by one Daniels of railroad ties to be cut from standing timber and delivered at the railroad track. In holding that there was no change of title until the agreement had been fully performed, the court says:

The respondent made no purchase of the ties as they were from time to time cut. Had a quantity of the trees been consumed by an accidental fire, Daniels could not have recovered their value of the respondent nor the value of the ties which might have been manufactured therefrom. The respondent was not bound to take all the ties manufactured, but only such as were merchantable and suitable for the purpose intended. The ties were to be examined to ascertain this fact, and until so examined and accepted by the respondent the title did not vest in him.

Cases along these lines are very numerous, and, without pursuing them farther, we have to say that, under the rules of law established by these precedents and applicable to the proved or admitted facts in this case, the plaintiff failed to show a completed sale of the logs. He himself says that the logs were to be inspected to determine whether they were of the kind he had agreed to furnish as well as their measurement. All his conduct is in accordance with the presumption which usually attaches to such transactions that there was to be no transfer of title to the logs until inspection and measurement. When first he requested the scaling of the logs, he concedes that his own work was yet incomplete, and the scaling could not then have been done. When finally the logs had been banked,

and he again mentioned the matter to defendant's manager and was told the scaler would not be there to attend to it till the 1st of the following month, he appears to have found no fault, and, upon receiving money with which to meet the demands of his servant who cut the trees, allowed the matter to wait the scaler's return. At least, he at no time insisted upon immediate measurement or notified the defendant that his part of the work was done, and that the logs were upon the bank at its risk if not promptly accepted or rejected. Under such circumstances, there was nothing upon which the jury could find a mutual intent of the parties that the title should pass before the contract had been fully performed by both parties. The case of *Welch v. Spies,* 103 Iowa, 389, on which the plaintiff relies, does not seem to be in point. There the plaintiff sold not less than one thousand six hundred nor more than two thousand three hundred bushels of corn contained in two specified cribs, one containing one thousand six hundred bushels and the other about seven hundred bushels; plaintiff reserving the right to take out or retain two hundred bushels for himself and fifty bushels for a third person. There was evidence from which it could be found that the parties intended a present delivery, and the title to all the corn was intended then to pass subject to the right of the seller to take from the broken crib the amount reserved by him. The jury found that there was a completed sale of the unbroken crib of one thousand six hundred bushels only, and this finding was held by us to have been justified by the showing made. The case thus stated is no exception to any of the rules which we have already stated. The crib of one thousand six hundred bushels in unbroken bulk, a specific designated article, was sold in its entirety without reservation, and to that extent only the sale was held complete, though under the particular facts there stated it might well have been sustained *in toto* had the jury found that such was the intent of the parties. *Bushnell v. Bridge*

*Co.,* 140 Iowa, 405, also cited by plaintiff, does not turn upon the question as to when title passed, and is not in point. So, also, in the case of *Live Stock Co. v. Godding,* 20 Colo. 249 (38 Pac. 58) a sale of alfalfa to be cut and measured was held complete without measurement because the buyer had appropriated the property, and was therefore not in a position to deny having accepted it.

Much of the confusion which may be found in the cases upon this question appears to have arisen in the failure to discriminate between sales of chattels which are *in esse,* clearly identified and ready for delivery and appropriated to the contract, and agreements for the sale of chattels of a given kind or quality which are yet to be produced, or to which something is yet to be done by the seller to put them in deliverable condition. In cases of the latter class there is always a strong presumption against any intent to pass title to the property until the conditions of the contract have all been performed. True, a party may buy an unfinished article and agree with the seller to complete it for his benefit, but, as said by the Supreme Court of the United States, the proof of such agreement must be clearly made, "for the intention to pass the ownership by the contract can not be left in doubt." *Elgee Cotton Cases,* 22 Wall. 180 (22 L. Ed. 863). See, also, 1 Mechem on Sales, sections 507, 508. This distinction was given effect in *Augustine v. McDowell,* 120 Iowa, 401, where an agreement to sell a given quantity of corn yet to be harvested, it was held that the title did not pass, though part of the agreed price was paid. On no other principle can we adhere to the doctrine of *Cook v. Logan,* 7 Iowa, 142, *Courtright v. Leonard,* 11 Iowa, 32, *McClung v. Kelley,* 21 Iowa, 509, and other cases of that class, precedents which have been so often approved and followed that we can not consistently disregard them.

It is the contention of counsel for plaintiff that, whatever may be the general rule, the verdict of the jury is

equivalent to a finding that the parties did not intend that the passing of title should depend upon the inspection, acceptance and scaling and the court is concluded thereby, and that we are thus required to hold that the title to each log passed to defendant as soon as it was deposited upon the river bank. To this we have only to reply that such finding, if made, is wholly without support in the testimony. As we have already suggested a presumption attaches to contracts of this character that the title is not intended to pass until all conditions of the agreement are performed, and we think we must say as a matter of law that the record discloses nothing to rebut such presumption.

A new trial must be ordered. The judgment of the district court is *reversed*.