MARTIN BROS. & Co., Appellants, v. G. F. LESAN, Defendant, and THE BOWLES LIVE STOCK COMMISSION Co., INTERVENER, Appellee.

**Subrogation.** Where mortgaged cattle were not the same as those subsequently sold by the mortgagor, the purchaser, by paying the mortgage, was not entitled to be subrogated to the rights of the mortgagee.

**Replevin by mortgagee:** BURDEN OF PROOF: IDENTITY OF PROPERTY: EVIDENCE. In replevin of personal property by a mortgagee, he must recover on the strength of his own title, and has the burden of showing that the mortgagor was the owner of the property. Evidence reviewed and held insufficient to show such separation and identification of cattle as to pass title to the mortgagor.

**Replevin by mortgagee:** IDENTITY OF PROPERTY: EVIDENCE. In replevin by a mortgagee of cattle, the evidence is held insufficient to identify the cattle taken under the writ as those mortgaged to the plaintiff.

**Chattel mortgage:** CONSIDERATION. Extension of time of payment is a valuable consideration for a mortgage given to secure the debt.

**Sales:** CHANGE OF POSSESSION: CHATTEL MORTGAGE: NOTICE. There must be a change of possession of personal property such as to give third parties notice of the change in ownership, before

a mortgage by the purchaser, though recorded, will constitute notice to subsequent purchasers or incumbrancers.

**Same.** A mortgagee who relies on actual notice to defeat the claim of a subsequent incumbrancer has the burden of proving notice.

*Appeal from Ringgold District Court.*— HON. H. M. TOWNER, Judge.

FRIDAY, FEBRUARY 9, 1906.

ORIGINALLY this was an action of replevin to recover the possession of 105 head of steers from the defendant, Lesan. In that action the Bowles Live Stock Commission. Company intervened, and claimed a right to the property under a mortgage executed to it by defendant, Lesan. Plaintiff bases its right to possession on a chattel mortgage executed by one Walter Edie, who, it is claimed both by defendant and intervener, had no authority to execute the same, for the reason that he never had any title to the property. Edie's title is based upon an alleged sale of the cattle by one Day Dunning, who was a member of a partnership composed of defendant, Lesan, and said Dunning. At the time Edie claims to have purchased the cattle from Dunning there was a mortgage thereon to intervener, securing a debt of something like $3,180, and plaintiff thereafter took up and paid this mortgage indebtedness pursuant to a contract it had with Edie to do so. Plaintiff further claims that intervener's mortgage, under which it now claims, was given to secure an antecedent debt, was not taken in good faith, but with knowledge of plaintiff's mortgage. Plaintiff not only asked possession of the property under its mortgage, but also asked for a decree subrogating it to the rights of intervener under the mortgage which it paid off as hitherto stated. The case on the issues thus presented was transferred to the equity side of the calendar and tried to the court, resulting in a decree dismissing plaintiff's petition. Plaintiff appeals.— *Affirmed.*

Fuller & Fuller and Sullivan & Sullivan, for appellant.

Nathaniel C. Sears, Miles & Steele, O. G. Young, Spence & Smith, and Edwin Hedrick, for appellee.

DEEMER, J.— The firm of Lesan & Dunning, composed of G. F. Lesan and Day Dunning, was engaged in the business of buying, raising, feeding, and selling cattle in Missouri and Iowa.   On February 6, 1903, this firm borrowed something like $3,100 of intervener, and as security therefor Lesan made a mortgage on one hundred and five head of cattle belonging to his firm to the intervener; the cattle being described as follows:   " Seventy-five head of three year old steers; thirty head of two year old steers. Above cattle are colors, are all natives, all dehorned, branded with ' L ' on right hip, which is now or may hereafter be on or about the premises known as the ' Powell and Lawrence land ' in Harrison county, Mo."   On or about August 14, 1903, and after the execution of this mortgage, Day Dunning undertook to sell Walter Edie one hundred and five head of the Lesan & Dunning cattle for the sum of $4,300; attempt being made, as is now claimed, to sell the same cattle which had theretofore been mortgaged to intervener; the sale being subject to the mortgage.   Pursuant thereto Edie paid Dunning $1,119.26, which was credited to the account of Lesan & Dunning in a bank which Dunning was then conducting, where the firm kept its account.   The sale was oral, and some of the witnesses say that the intention was to convey the animals which were covered by intervener's first mortgage.   In order to obtain the money with which to make the purchase, Edie borrowed the sum of $4,300 from plaintiff and executed a mortgage to it to secure the loan.   The description of the property in this mortgage reads as follows:

The following described cattle, to wit:   One hundred five head of steers of various colors, all dehorned, branded

with letter L on right hip; eighty head three and four year old, and twenty-five head of two year old, all native cattle. The above cattle will be cared for on the George Lawrence land described below until Dec. 1st, 1903, then removed to the P. C. Ross farm in Ringgold county, Sec. eleven, township seventy, range twenty-nine. The stock above described may have other brands and marks than those mentioned above, but those given are the brands and marks, and carry the title to the cattle. The above-described stock and chattels have been in the possession of the party of the first part for a period of ——— last past, having been paid the party of the first part or Day Dunning of Mt. Ayr, Iowa. The average weight of the above stock is one thousand fifty pounds. This mortgage is given to secure the payment of purchase money. The said stock is in the undisputed possession of said party of the first part on the premises of George Lawrence on Sec. twenty-three in township sixty and sixty-seven, range twenty-nine, in Harrison county, Missouri.

This mortgage was duly acknowledged and properly recorded in Missouri on the 18th day of August, 1903, and in Ringgold county, Iowa, on the 22d day of August of the same year. Edie received from plaintiff a draft for $1,119.26, and this he turned over to Dunning, and on August 17th a draft for $3,180 and some cents was sent by plaintiff to the intervener to take up the February mortgage, and a release was executed by intervener to Lesan, the mortgagor, which for some reason was never recorded. On January 5, 1904, defendant, Lesan, executed a mortgage to intervener upon one hundred and fifteen head of steers to secure the sum of $4,680, evidenced by a note of that date, due July 5, 1904; the description in that mortgage being as follows: " 115 head of three year old steers, all reds' roans, and black, except five head, branded with ' L ' on right hip, together with the natural increase thereof, which is now or hereafter, until the indebtedness hereinafter mentioned shall be paid, may be on or about the premises known as the G. F. Lesan farm, in Poe township, in

Ringgold county, Iowa, in feed lot. The above-described property is all the property of this description owned or controlled by the mortgagor on the premises aforesaid." This mortgage was duly acknowledged and properly filed for record in Ringgold county, Iowa.

This action is to recover the possession of the one hundred and five head of cattle supposed to be covered by plaintiff's mortgage of date August 14, 1903. Defendant and intervener each denied plaintiff's right to recover, and each pleaded that Edie never had any title to the property; that the property taken by plaintiff was in defendant Lesan's possession as surviving partner of Lesan & Dunning,— Dunning in the meantime having failed in business—; that Edie never had possession of the cattle; that the mortgage to intervener was and is a prior claim to that of plaintiff; and that plaintiff's mortgage does not cover the cattle in dispute, and was and is of no validity.

Plaintiff in reply pleaded the invalidity of intervener's mortgage, alleged that it was taken with knowledge of its (plaintiff's) mortgage, and it also asked to be subrogated to the rights of intervener in and to the mortgage held by it, which was paid off and canceled. A great many questions have been argued, but plaintiff's counsel frankly concede that if the cattle taken under the writ are not the ones sold to Edie, or if the alleged sale to Edie was never consummated, so that title passed to him, or if plaintiff's mortgage does not, in fact, cover the animals taken, or is so uncertain in description that it cannot be made to cover them as against the claims of intervener under its mortgage, then it cannot recover, and the judgment and decree of the trial court dismissing its petition are correct.

For the purposes of the case we shall assume as a matter of law, that Dunning, one of the members of the firm of Lesan & Dunning, had the right to sell one hundred and five head of cattle belonging to the firm, without the knowledge or consent of Lesan. This proposition is denied by de-

fendant and intervener, and a long brief is submitted on the proposition. But plaintiff must show in the first instance that there was such a sale as passed the title to Edie; for, if he had no title, he had nothing to mortgage. Again, it must show that the cattle sold to Edie, if any were sold, are the ones covered by its mortgage, and, further, that the ones taken under the writ of replevin are the ones sold to Edie and the same ones covered by its mortgage.

We go, then, directly to this proposition; and, first, we note the claims made by plaintiff that the animals taken by it under the writ are the same ones as are covered by the February, 1903, mortgage made to intervener.

1. SUBROGATION. Going to the testimony, we discover from a preponderance thereof that the cattle covered by intervener's first mortgage, are not the ones shown Edie when he claimed to have purchased them from Dunning. They were in another field, and were not shown or pointed out to Edie. Moreover, the evidence shows practically without dispute that the cattle covered by the first mortgage were shipped from Missouri to Ringgold county, Iowa, there fed, shipped to market, and sold in December of the year 1903, so that none of the cattle taken under the writ of replevin could have been the ones covered by intervener's first mortgage. This absolutely disposes of plaintiff's claim to a right of subrogation, and, as we think, practically disposes of the entire case, unless it be shown that Edie purchased and received title from Dunning to other cattle which were mortgaged to plaintiff, and that these other cattle were the ones taken under the writ of replevin. This latter proposition cannot be true, however, for two reasons: First, because it is contrary to the allegation of plaintiff's pleadings, wherein it avers that the property covered by its mortgage was the same which was sold to Edie, and that Edie purchased the cattle which had theretofore been mortgaged to intervener, and the evidence shows beyond all doubt that the cattle

taken under the writ were not the ones covered by intervener's first mortgage.

Second, the evidence fails to establish a completed sale to Edie. · Plaintiff must recover on the strength of its own title, and not on the weakness of that of its adversary; and **2. Replevin by mortgagee: burden of proof: identity of property: evidence.** the burden is upon it to show the validity of its mortgage, in that the mortgage was made by one having title to the property.

We shall refer briefly to the testimony on this point. Four persons were present at the time it is claimed Dunning sold the cattle to Edie, to wit, Dunning, Edie, a representative of plaintiff by the name of Braniger, and a man by the name of Lesan, a relative of the defendant. The first three mentioned drove from Ringgold county down into Missouri to a place known as the "Hatfield Ranch," where Lesan & Dunning then had about five hundred head of cattle. Dunning said in his testimony that he then sold Edie one hundred and five head of the average of that lot of cattle, and that there was no effort made to segregate or separate the cattle sold; that he never pointed any of them out as being included in the Bowles mortgage, and that no living person could have done so. Braniger said on direct examination that there were over two hundred head in the field which they examined, and that he and Edie picked out the cattle, and that one hundred and five were separated from the others. But he also said that these were represented to be the ones covered by intervener's first mortgage, which, as we have seen, cannot be true, or, if true, plaintiff did not get them under its writ. It is agreed that, according to the talk had on this day, Dunning was to keep the cattle for Edie, and that no date was set for their delivery. On cross-examination the witness said that in picking out the cattle Dunning would say, "this is a three year old," or "a four year old"; that the three and four year old cattle were singled out, and then the two year old, "they were separated out." Edie testified that the cattle were

separated or set one side by Dunning, and that Dunning said they were the ones covered by intervener's first mortgage. On cross-examination he said he saw all the cattle in the field, and that there were eighty head of three and four year old steers; but he still adhered to his statement that the cattle were separated, and that he purchased the one hundred and five head so set apart. He made several statements contradictory to this, however, to entirely disinterested witnesses, and at no time acted as one who had become the owner of one hundred and five head of cattle paying therefor the sum of $4,300. Indeed, he did nothing to indicate ownership, save to make plaintiff a mortgage thereon. The nature of the transaction as explained by Edie is not such as to impress one with the truthfulness of his testimony; and the statements he made to others correspond with Dunning's version of the matter. Lesan, the other party who was present when the claimed sale was made, testified substantially as did Dunning. We do not believe there was any such separation or identification of the cattle as to pass title to Edie. As supporting these views, see *Cook v. Logan,* 7 Iowa, 142; *Courtright v. Leonard,* 11 Iowa, 32; *Harwick v. Weddington,* 73 Iowa, 300; *Snyder v. Tibbals,* 32 Iowa, 447; *Welch v. Spies,* 103 Iowa, 389; *Allen v. Elmore,* 121 Iowa, 241. There is no doubt from the testimony that Edie understood he was buying the cattle covered by intervener's first mortgage. If he did not get them, he did not get what he bargained for, and, as the minds of the parties never met as to the subject-matter, there was no sale.

II. But, even if wrong in our conclusion as to the sale, there is another proposition which troubles plaintiff, and that is the identification of the property taken under the writ as to being the same animals pur-

**3. REPLEVIN BY MORTGAGEE: identity of property: evidence.**

chased by Edie from Dunning. Edie purchased, or thought he purchased, the cattle covered by intervener's first mortgage. That being true, there is an end of the case; for these were all sold

before this action of replevin was commenced. If they are not the animals covered by that mortgage, they must be those which were pointed out to him by Dunning just before the alleged sale was consummated. Are these the ones taken by plaintiff under its writ of replevin? As to this the testimony is even more doubtful than on the proposition as to the indentification of the property alleged to have been sold to Edie. In September of the year 1903 all the large cattle on the Hatfield ranch were brought into Ringgold county, and sold, as we have said, during the month of December. In October of the same year Lesan & Dunning purchased more than two hundred and fifty head of cattle, took them to the Hatfield ranch, where they were branded with the letter L on the right hip, and afterwards brought them into Ringgold county, and from these one hundred and five head were selected by plaintiff under its writ of replevin. True, some of the plaintiff's witnesses attempt to identify them, and to say that the ones taken under the writ are the same ones sold by Dunning to Edie the August before; but, in view of the facts as testified to by all the witnesses, we think it was impossible for any witness to identify them. Indeed, Dunning and Braniger frankly admit this. The cattle taken under the writ were the largest and choicest of the two hundred and fifty head from which they were taken; and the manner of selection was such that no man could truthfully say they were the ones sold to Edie by Dunning. Moreover, it appears from the testimony that from forty-six to fifty head of the animals taken under the writ were freshly branded. There are many other reasons for the conclusions we have reached, which we shall not set forth, as to do so would unduly extend this opinion. It is sufficient to say that these findings dispose of plaintiff's case.

III.    There is another reason why it cannot recover, however. Even conceding *arguendo* that there was a sale to Edie, there was no such change of possession as to give third persons dealing with the cattle notice thereof. Inter-

vener took the mortgage under which it now claims for a
valuable consideration — extension of time for
the payment of Lesan & Dunning's debt, if
nothing else — without notice of the claimed
sale to Edie and without any actual notice of plaintiff's
mortgage.

<span style="float:left">4. CHATTEL<br>  MORTGAGE:<br>  consideration.</span>

In the absence of change of possession, such as to give
notice of Edie's claim to the stock, a mortgage made by
him to plaintiff, even if recorded, would not be constructive
notice to purchasers or subsequent incum-
brancers of the property. *Sutton v. Ballou,*
46 Iowa, 517; *Boothby v. Brown,* 40 Iowa,
104; *Nuckolls v. Pence,* 52 Iowa, 582. Should we find
there was such a sale as to pass title as between the par-
ties, it is nevertheless true that Dunning the vendor was
to keep possession of the property until some time in the
fall or winter, and there is no testimony in the record as
to any subsequent change of possession.

<span style="float:left">5. SALES: change<br>of possession:<br>chattel mort-<br>gages: notice.</span>

Plaintiff says, however, that intervener had actual
notice of its mortgage when it took its security, and it in-
troduced testimony to establish its claim.  It failed, how-
ever, to produce enough to overcome the de-
nials made by intervener.  Under section
2906 of the Code the burden was upon plaintiff to show
actual notice, and this it did not do.  We have gone over
the case with great care, and discover no reason for disturb-
ing the finding of the trial court.

<span style="float:left">6. SAME.</span>

The judgment is therefore *affirmed.*