## In re BROWNSVILLE BREWING CO. GEORGE J. MEYER MFG. CO. v. SPROUL et al.

### No. 7311.

Circuit Court of Appeals, Third Circuit.

Jan. 29, 1941.

Eugene P. Meyer, of Milwaukee, Wis., and W. Brown Higbee, of Uniontown, Pa., for appellant.

Solis Horwitz, of Pittsburgh, Pa., Shelby, Ray & Coldren, of Uniontown, Pa., and Lewis M. Alpern, of Pittsburgh, Pa., for Robert C. Sproul, Jr., trustee-appellee.

Dean D. Sturgis, of Uniontown, Pa., and M. J. Laponsky, of Brownsville, Pa., for appellee Nat. Deposit Bank of Brownsville.

Before BIGGS, MARIS and CLARK, Circuit Judges.

CLARK, Circuit Judge.

■ Appellant here is contending for a liberal construction of one of the Pennsylvania Recording Acts. The argument is, we think, inappropriate. That type of statute is for protection, not for punishment. Its interpretation should be strong to help its beneficiaries and not, as in the criminal law, tempered with mercy toward those it strikes down. This is particularly so in a State whose "abhorrence of the secret lien" did not even admit of the palliative of recording.[1]

The particular Recording Act is that applicable to the conditional sale of chattels attached to the realty.[2] In its original form it was an enactment of the Uniform Conditional Sales Act which is in turn "patterned after statutes existing in Massachusetts, New York, Oregon, and Pennsylvania". Conditional Sales—Legislation in the State of Washington—Recent Legislation, Particularly Where Personalty Is Attached To Buildings On Realty, 13 Washington Law Review and State Bar Journal 46, 53 (comment). The learned author, Ayer, of the last cited comment poses the problem thus:

"The law is replete, however, with cases where a party in possession using the prop-

---

[1] Martin v. Mathiot, 14 Serg. & R., Pa., 214, 16 Am.Dec. 491; In re Collins Hosiery Mills, D.C., 19 F.Supp. 500, 502.

[2] 69 P.S. § 404. The pertinent part of the statute as amended reads as follows:

"First. As against a subsequent purchaser, subsequent mortgagee, or other subsequent encumbrancer of the realty, for value and without notice of the reservation of property in the goods, such reservation shall be void as to any goods so attached to the realty as to form a part thereof, unless the conditional sale contract, or a copy thereof, shall be filed, as required in section six, before such purchase is made or such mortgage is given or such encumbrance is effected.
* * *

"Third. In order to entitle the conditional sale contract or copy thereof, referred to in this section, to be filed and indexed, it shall have endorsed thereon or attached thereto a statement, signed by the seller, *briefly describing the realty*, and stating that the goods are, or are to be, affixed thereto." 1925, May 12, P.L. 603, No. 325, § 7; 1927, May 12, P.L. 979, § 2 (italics ours).

The Act was further amended on July 12, 1935, P.L. 658, § 1, 69 P.S. § 404; 2 Uniform Laws Annotated (1922), Conditional Sales Act, 1940 Supp. p. 39.

erty creates a more or less deceptive appearance as to the ownership of the property so far as third parties are concerned. As between the vendor and a third party who has been misled, the law has taken into consideration not merely the objective incidents such as use and possession, but in addition the balance of social, particularly business, convenience to vendors and third parties generally. Sometimes the third party is protected; sometimes the vendor. In the case of the conditional sale, the vendor was with few exceptions protected at common law, the rationalizations of estoppel, apparent ownership, and constructive fraud being urged in vain. With the intention of protecting both the vendor and the third party so far as possible, resort was made to recording and filing acts for the purpose of giving knowledge to third parties. These acts qualified the rights of the vendor unless so recorded or filed. While such acts have been adopted in most of the states, there is still *some question* as to the policy of requiring filing or recording due to the fact that they place a restraint upon merchandising because of the consequent reflection on the credit of the vendee and the additional costs involved, and possibly the further fact that the reliance by third parties is largely fictional rather than real. Accordingly a number of the states still protect the vendor without the necessity of recording or filing." 13 Washington Law Review and State Bar Journal 46-47 (Comment) (italics ours), and his question is answered by the Uniform Law Commissioners who say in their note to Section 5:[3]

"To prevent injury to innocent persons who may rely on the buyer's apparent ownership, it seems desirable to insert this filing requirement in the Uniform Act. The burden on the seller is slight, and the benefit to the public is great." 2 Uniform Laws Annotated (1922), Conditional Sales Act, p. 7.

█ In describing the application of this general policy to our particular field, i. e. the conditional sale of fixtures, Professor Bogert, the draftsman of the Act, lays down the principle which we think should control the decisions of the courts. In his Commentaries, he says:[4] "The theory of the Act is that a conditional seller of a fixture should be given protection and allowed to retain title as security for the payment of the price of the fixture, but that in order to retain such title he should be required to give *notice adapted as nearly as possible to reaching dealers in real property*. The conditional seller of the fixture should not get protection by filing the contract with ordinary conditional sale contracts and making a record similar to that made in the case of chattel mortgages. It is unreasonable to ask purchasers and mortgagees of realty to search in the personal property records regarding every article connected with a building which might have been sold separately." 2A Uniform Laws Annotated, Bogert's Commentaries on Conditional Sales § 65, p. 98, (italics ours).

Does the brief description of the case at bar satisfy the principle? We think not at all. The property sold on condition is bottling equipment and the real estate to which it is attached is functionally a brewery. There are three references to the real estate, each one a little more detailed than the last. The first is the statement accompanying the filed contract and describes the property as "* * * Street, City of Brownsville, State of Pennsylvania." In the body of the contract this is expanded to "At Street Water Street, City Brownsville, Pa." and finally in the refiling of July 24, 1936, "Water and Bolivar Streets, South Brownsville, City of Brownsville, State of Pennsylvania". The trouble with these latter two amplifications lies in the fact that the bottling equipment is in the ice plant and the ice plant is located neither on Water Street nor on Water and Bolivar Streets but on a parcel of land bounded on the east by Fayette Street, on the south by Edel Alley, on the west by Bolivar Street, and on the north by an unnamed alley. This property was not owned by the Brewing Company and therefore the inaccurate description could not have been augmented and corrected by a glance at the land records. Nowhere is there any reference to the standard and now ancient method for the identification of urban real estate.[5]

---

[3] Conditional Sales—Effect of Failure to Refile Conditional Sale Contract Within The Time Prescribed By The Uniform Conditional Sales Act, 81 University of Pennsylvania Law Review 628; 1 Williston on Sales, 2d Ed., § 328a, p. 767; Mariash on Sales, § 186, pp. 436–439.

[4] Cf. Conditional Sales: Fixtures: Conditional Seller of Fixtures Versus Purchaser of Realty, 13 Cornell Law Quarterly 435, 437 (note).

[5] "By the numbers".

█ As we are concerned with a general standard, on the one hand, and particular circumstances, on the other, we cannot turn our present facts into a permanent rule. We cannot say, then, that a street or street numbers are a sine qua non. We do say, however, that to omit both places a burden on "dealers in real estate" inconsistent with the purpose of the statute. Professor Bogert in his phrase "as nearly as possible" acknowledges the practical limitations in the policy. For the same reason, the cases construing the description of personal property recognize the difficulties there. They accordingly lay down a rule that calls for inquiry if the description suggests it and upholds the description if it would naturally lead to identification of the property, Tokheim Oil Tank & Pump Co. v. Fentress, 4 Cir., 33 F.2d 730, 65 A.L.R. 714. These very cases, however, also recognize the obvious differences in the two classes of property. As one court puts it: "Land can be so described as to enable a surveyor to locate it merely by following the metes and bounds set out in the mortgage [6] * * *. There are some forms of personal property which it is possible to describe by marks, numbers, or other terms. But this is not always practicable." A. S. Thomas Furniture Co. v. T. & C. Furniture Co., 120 Ga. 879, 48 S.E. 333.

In summation, it is not only possible, but nearly always extremely easy to identify urban real estate by street and number. Here, for instance, the seller just carelessly left a blank with instructions (not complied with) to have it filled in. We see no cause, therefore, why the "dealer in real estate" (here the appellee) should be forced to make any inquiry no matter how simple of success. We agree with the learned Court for the Sixth Circuit when it said: "The property here involved is described in the contract as an automatic sprinkler system, called 'Equipment,' situated in the knitting mill of the bankrupt at 827-828-829 South Spring Street, Shelbyville, Tenn. This definitely locates it and we think that no other sprinkler system could be *mistaken* for it. See Stoll v. Schneider, 158 Tenn. 341, 344, 13 S.W.2d 325." In re Robinson-McGill Mfg. Co., 70 F.2d 100, 101 (italics ours).

The Pennsylvania Courts and our own District Court decisions exhibit a similar tendency.[7] We may say that insistence on a strict, definite, and detailed requirement has this desirable effect. Conditional vendors and their advisers know what they must do, can easily do it, and when they have done it are not subject to the conceptions of any particular court.

█ As the description in the statement of the refiling is the more detailed, appellant stresses it also. There would seem to be three answers to this contention. First, although fuller, the description is still wrong. One correct street is added to other incorrect ones. Second, the three years elapsed since the original sale cannot be considered a reasonable time. Pennsylvania seems to incline toward the authorities[8] adhering to such a requirement—one, incidentally, more in keeping with the purpose of the recording provisions. Speaking for the Supreme Court, Mr. Justice Simpson said:

---

[6] A fortiori urban realty described by streets and street numbers.

[7] Delco Ice Mfg. Co. v. Frick Co., 318 Pa. 337, 340, 178 A. 135; In re Famous Cleaning & Dyeing Co., D.C., 7 F.Supp. 280; In re Yough Brewing Co., D.C., 27 F.Supp. 729; In re Jacob F. Thaler & Co., D.C., 1 F.2d 461 (under an earlier Act); In re Smith, D.C., 19 F.Supp. 595; cf. Yates American Machine Co. v. Jury, 3 Cir., 56 F.2d 831, certiorari denied, 287 U.S. 615, 53 S.Ct. 17, 77 L.Ed. 534.

[8] 55 C.J. § 1268, p. 1259; The Time of Conditional Sales Contracts, 13 St. Johns Law Review 205 (note); contra Collingswood Trust Co. v. Brunswick-Balke-Collender Co., 112 N.J.Eq. 597, 164 A. 689; Statutes—Conditional Sales Contracts—Protection of General Creditors of the Buyer, 18 New York University Law Quarterly Review 147 (note); Conditional Sales—Effect of Failure to Refile Conditional Sales Contract Within Time Prescribed by the Uniform Conditional Sales Act, 81 University of Pennsylvania Law Review 628, footnote 7 (note); 10 Am.Jur. 791, § 115, Note 2. It should be noted that statutes governing the recording of chattel mortgages usually set a time limitation for recordation. The limitation is rigidly observed. See Chattel Mortgages—Recording—Filing "Forthwith" Under Texas Statute, 17 Texas Law Review 202 (note); Chattel Mortgages—Filing, Recording & Registration—Effect of Failure to Record Within Period Prescribed by Illinois Statute, 17 Chicago-Kent Law Review 177 (note).

"The Act of May 14, 1925, P.L. 722, says that the contract or a verified statement thereof, '*shall* be filed.' A fair conclusion from this is that, unless otherwise provided, and so far as concerns the present ·· ·- ~~+ such filing must be

INSPECTED BY

C. SCHWARTZ

The appellant claims that ...... .... __ is not the kind of receivership essential to an attack on a conditional sales contract. We quite concede the distinction between the rights of a receiver for an insolvent corporation and those of a receiver for a solvent company, and further concede that the aforesaid power of attack rests with the former only.[9] So if the receivership is still in progress, the court hearing the conditional sales controversy will refer the question of solvency to the receivership court for a finding.[10] Although that is impossible here, fortunately, as we think, the courts of Pennsylvania do not take the appellant's technical view. So it has been held that where it is obvious from the facts that the corporation was insolvent at the beginning of the receivership proceedings, a formal adjudication of insolvency is unnecessary.[11]

▇▇ There are sufficient facts of record to sustain the finding of the Court that the bankrupt was, in fact, insolvent at the

time of the appointment of the state court receiver. On May 12, 1934, the bankrupt entered into an agreement with its creditors for an extension of time for the payment of its indebtedness and the operation of its business under the supervision of a creditors' committee, and as part thereof ex- ---ditors a mort- used in the pt defaulted with the re- litors began st the prop- .ined the ap- g foreclosure iot to provide lissipation of a me....__ _____ the assets which had already been prevented by the creditors' agreement, but was to provide a means for realizing on the assets. The receiver was appointed as a representative of the creditors in lieu of attachments. He should have as many rights as a creditor who has obtained a judgment execution. Since there was little change in the company's situation subsequent to the receiver's appointment and since the bankrupt was found hopelessly insolvent in the 77B, 11 U.S.C.A. § 207, proceedings, the Court below was amply justified in treating the receivership proceeding as a general receivership for an insolvent corporation. If the refilings were invalid against the state court receiver, they were invalid against the bankruptcy trustee since under Section 77B, sub. i the trustee has the rights of the prior receiver.[12]

▇ On the assumption that the recordings, both original and refiled, are invalid

---

9 Cowan v. Pennsylvania Plate Glass Co., 184 Pa. 1, 38 A. 1075; Duplex Printing Press Co. v. Clipper Publishing Co., 213 Pa. 207, 62 A. 841; Blum Bros. v. Girard Natl. Bank, 248 Pa. 148, 93 A. 940; 61 A.L.R. 975, note; Sullivan Machinery Co. v. Griffith, 294 Pa. 422, 144 A. 421, 61 A.L.R. 974. For the rights of a receiver generally, see Power of Receiver for Corporation to Assert Causes of Action Vested Solely in Creditors, 46 Yale Law Journal 1229 (note); Rights of Various Types of Creditors in Property Unavailable to the Debtor, 47 Yale Law Journal 1164 (note); Conditional Sale—Unrecorded—Property of Vendee's Receiver Over Vendor, 2 Ohio State Law Journal 287 (note); cf. Rights of Creditors of Insolvent Corporation—Greater than Rights of Corporation, 34 Michigan Law Review 1196 (note).

10 Sullivan Machinery Co. v. Griffith, 294 Pa. 422, 144 A. 421, noted in 61 A.L. R. 974, especially pages 980, 981.

11 Blum Bros. v. Girard Natl. Bank, 248 Pa. 148, 93 A. 940, Ann.Cas.1916D, 609; cf. Shipler v. New Castle Products Corp., 293 Pa. 412, 418, 143 A. 182, 184.

12 On the rights of a trustee where no receivership has intervened, see Bankruptcy—Conditional Sales—Recording Statutes, 24 Minnesota Law Review 101 (note); Bankruptcy—Liens—Status of Trustee in Bankruptcy Under Section 47a (2) As Affected By Actual Notice of Creditors of the Bankrupt, 18 Minnesota Law Review 541; Bankruptcy—Right of Conditional Vendor As Against a Trustee in Bankruptcy, 19 Boston University Law Review 650.

for want of proper description, appellant makes two further points. He says on the one hand that the bottling equipment is not affected and on the other that the conssciences of the creditors are. That the particular chattels do not call for record is certainly foreign to the legal soil of Pennsylvania. The Courts of that State, after previous prophetic intimations, finally subscribed to what is known as the institutional theory of chattels affixed to realty. That theory has met with praise from a writer in a relevant law review. Conditional Sales —Fixtures—Rights of a Conditional Sale Vendor in Chattels Affixed to Realty as Against an Unassenting Prior Mortgagee, 83 University of Pennsylvania Law Review 916. In commenting on the leading case of Central Lithograph Co. v. Eatmor Chocolate Co., 316 Pa. 300, 175 A. 697, it was said:

"In interpreting 'freehold' to include all fixtures in a plant which are necessary to its operation as a complete going concern, the Pennsylvania court has unequivocally allied itself with the few exponents of the 'institutional' theory, of which New Jersey was hitherto the leading proponent. The criticism directed against this theory has been that the mortgagee, having advanced nothing in reliance on the value of the subsequently annexed fixtures, should not be permitted to enhance his original security as against the expression of a contrary intention by the parties installing the chattels, who have agreed that title should be reserved in the vendor. This argument, however, assumes that the mortgagor-mortgagee relationship contemplates the restriction of the security to the property in its physical condition as of the time it was pledged— a dubious assumption in cases where the security is an industrial concern whose chief value is its attribute as a business institution. The equity in permitting the mortgagee to take advantage of normal improvements is even more forceful when it is realized that he, almost alone, bears the loss of depreciation and unfavorable market fluctuations. Nor is the conditional sale vendor left without protection, as is frequently supposed, since he may adequately secure himself by obtaining the readily procured assent of the mortgagee to his reservation of title." 83 University of Pennsylvania Law Review 916, 917[13].

This Court has already, as it must, given its own concurrence in the principle,[14] and a colleague of the judge now appealed from has done likewise in a case involving exactly the same type of personal property.[15]

On the question of notice, we think appellant falls between two stools. If he intends to rely on the rule of burden of proof of notice, he has not so framed the issue. The petition is for reclamation of the property. An improper conditional sale contract is void as against a trustee in bankruptcy.[16] The cases divide on the question of whether the burden of proof of notice is on the vendor.[17] The Pennsylvania courts have not spoken. Each view has its sup-

---

13 Cf. Conditional Sales—Rights of Conditional Vendor of Chattels Under a Recording Act As Against Subsequent Purchasers Of the Realty, 77 University of Pennsylvania Law Review 1022; Fixtures—Effect of Forfeiture of Lease on Rights of Conditional Vendor Who Sold Chattels To Lessee Under Title Retention Agreement, 34 Michigan Law Review 426; Fixtures—Conditional Sales—Rights of Conditional Seller of Articles Annexed to Realty as Against Vendor of Realty, 19 Minnesota Law Review 342 (note); Sales—Conditional Sales: Estoppel of Conditional Vendor to Assert Prior Lien Against Judgment Creditor of Vendee, 22 Cornell Law Quarterly 269 (note).

14 Medical Tower Corp. v. Otis Elevator Co., 3 Cir., 104 F.2d 133.

15 In re Yough Brewing Co., D.C., 27 F.Supp. 729.

16 Remington on Bankruptcy, 4th Ed., § 1578; Bankruptcy—Conditional Sales—Recording Statutes, 24 Minnesota Law Review 101 (note).

17 In re Bazemore, D.C.N.D.Ala., 189 F. 236; In re Master Knitting Corp., 2 Cir., 7 F.2d 11; In re Pointer Brewing Co., 8 Cir., 105 F.2d 478; Hogan v. Detroit United R. R., 154 Mich. 478, 481, 118 N.W. 140; Martin Bros. & Co. v. Lesan, 129 Iowa 573, 105 N.W. 996. Contra, In re Douglas Lumber Co., D.C. Wyo., 2 F.2d 985; Singer Mfg. Co. v. Nash, 70 Vt. 434, 41 A. 429; Equitable Auto Sales Co., Inc. v. Sherman, Sup., 170 N.Y.S. 948.

porters[18] and its critics.[19] Here again the point of view rather depends on the general attitude toward the "secret lien". As one District Court puts it: "The repossessing vendor is clearly in the position of a plaintiff, and the burden of proof therefore rests on him. * * * True, the difficulty of sustaining the burden may at times be insurmountable. But the burden is not inequitable, in that its difficulty varies in proportion to the neglect of the vendor in recording his contract. If he records promptly, there is no difficulty at all. The longer he waits the more difficult the burden becomes." In re Guild, Bloomfield & Jensen, 51 F.2d 818, 820, 821.

Even the partizans of the conditional vendor would not, we believe, permit him to raise the question for the first time after the testimony has been closed. That is the case here.

We think that delay arose because appellant really intended an attack on the distribution of the proceeds of the property rather than on the property itself. If he then can affect the mortgagee bank with notice, the rule applicable is admirably stated by the learned author of the law review earlier cited.

"Thus when the conditional vendor proves that some (the creditors) of them had notice of his claim as of date anteceding the beginning of the proceedings, his lien is validated as far as the claims of such creditors are concerned, and so his debt has priority over theirs in sharing the proceeds of the goods. As a result, only the total amount of the claims of those creditors who could have secured priority over the conditional vendor's lien by an actual attachment at the time of the bankruptcy proceedings is allowed to stand ahead of the conditional vendor's claim on the goods." Bankruptcy—Right of Trustee to Property Sold to Bankrupt Under an Unrecorded Conditional Sale, 4 Texas Law Review 223, 225–226 (note).[20]

The order of the District Court sustaining and approving the order of the Referee is affirmed.

[18] Bankruptcy—Right of Trustee to Property Sold to Bankrupt Under An Unrecorded Conditional Sale, 4 Texas Law Review 223 (note).

[19] Conditional Sales—Failure to Record —Burden of Proof of Notice, 26 Columbia Law Review 227 (note).

[20] Cf. In re Fidler & Brock, 6 Cir., 220 F. 843, Ann.Cas.1916A, 1268.